528 July 15, 2026 No. 669

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of T. B.-M.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

T. B.-M.,
*Appellant.*

Coos County Circuit Court
18JU07940; A184672

Andrew E. Combs, Judge.

Submitted November 17, 2025.

Christa Obold Eshleman and Youth, Rights & Justice
filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman,
Solicitor General, and Kirsten M. Naito, Assistant Attorney
General, filed the brief for respondent.

Before Ortega, Presiding Judge, Joyce, Judge, and
Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Youth challenges a juvenile court order requiring them to report as a sexual offender. They argue that the juvenile court applied an incorrect legal standard and challenge the juvenile court's view of the evidence regarding youth's conduct shortly before the hearing. They ask us to take *de novo* review and to reverse after reevaluating the evidence under the correct standard or, alternatively, to remand for proceedings under the correct legal standard.

We decline to take *de novo* review because this is not an exceptional case that merits such review. As we explain below, the record demonstrates that the juvenile court understood and applied the correct legal standard and we conclude that, whatever our concerns regarding the imposition of a registration requirement under these circumstances, there is sufficient record support for the juvenile court's finding that youth had not met their burden of showing, by clear and convincing evidence, that it was highly probable that youth was not likely a public safety risk, meaning that they were not likely to reoffend. Accordingly, we affirm.

We discuss the facts only as necessary to explain our decision in this nonprecedential memorandum opinion. Youth suffered a "highly chaotic and traumatizing upbringing," which included sexual, physical, and emotional abuse. They were removed from their mother's care at age four and lived in several placements. They displayed sexualized behaviors and spent a period in residential treatment for young children. In a later foster placement, youth engaged in conduct that resulted in a number of charges for sexual offenses and, after they admitted to one count of attempted first-degree sodomy in 2019, they were placed in the custody of the Oregon Youth Authority (OYA). Youth participated in treatment and programming and made some progress.

At the appointed time at the close of youth's time in OYA custody, the juvenile court held a hearing pursuant to ORS 163A.030 to determine whether youth would be required to report as a sex offender. After hearing testimony and receiving evidence, the juvenile court found that youth had failed to meet their burden to prove that they were

rehabilitated and did not pose a threat to the safety of the public. The court ordered youth to report as a sex offender, and this appeal followed.

We first address whether the juvenile court applied the correct legal standard, a question we review for legal error. *See Espinoza v. Evergreen Helicopters, Inc.*, 359 Or 63, 116-17, 376 P3d 960 (2016) ("[W]hether a trial court applied the correct substantive standard to guide its decision is a question of law."). Youth argues that the juvenile court applied an incorrect legal framework, as demonstrated by its statement that, "considering the amount of trauma that [youth] has encountered and suffered throughout life, rehabilitation is going to be a long term—long, long, long term project." According to youth, that statement indicated that the juvenile court "applied an erroneously high standard—essentially 'no risk.'"[1]

We disagree. At the outset of the hearing, the court articulated the correct legal standard as set forth in *State v. A. R. H.*, 371 Or 82, 530 P3d 897 (2023), and referenced that standard throughout the hearing. Viewed in context, its observations about youth's severe past trauma were connected to the challenges youth faces in addressing that trauma, and did not demonstrate that the juvenile court erroneously believed that youth had to prove that they had "no risk" of reoffending or that they needed to be completely rehabilitated from their own trauma to meet their burden at the hearing.

We next address youth's further argument that the juvenile court impermissibly inferred that youth's recent use of pornography demonstrated that youth had a high risk of sexually reoffending, and that the court otherwise lacked a basis for its conclusion that youth had failed to meet their burden.[2] Youth points to the juvenile court's

---

[1] We reject the state's contention that youth failed to preserve their argument as to the standard applied by the juvenile court. Contrary to the state's view, youth was not required to object during the juvenile court's recitation of its oral ruling to preserve an evaluation of whether the court applied the correct legal standard in making that ruling.

[2] We again reject the state's contention that youth failed to preserve their argument as to the court's assessment of youth's recent conduct. Contrary to the state's view, youth was not required to make further arguments about that issue

statement that youth's recent conduct "pushe[d] [the court] over the edge as far as *** [youth's] failure to present clear and convincing evidence ***." This court reviews whether an inference is reasonably inferred from the evidence, *i.e.*, nonspeculative, for legal error. *See*, *e.g.*, *State v. Rogers*, 301 Or App 393, 398-400, 457 P3d 363 (2019) (reviewing the facts and circumstances in the record to determine whether a defendant's state-of-mind could be reasonably inferred or whether that inference was too speculative). As to the juvenile court's finding that it was unpersuaded that youth was rehabilitated and did not pose a threat to public safety, this court generally reviews "whether the evidence in the record, together with all reasonable, nonspeculative inferences that the factfinder could have drawn from the evidence, permitted the court's finding or, conversely, required a different finding." *A. R. H.*, 371 Or at 84.

The court's ruling demonstrates that it was youth's inability to conform their behavior to comply with probation conditions—rather than the underlying conduct of viewing pornography—that demonstrated to the juvenile court that youth had not met their burden. Because the juvenile court did not make the impermissible inference that youth asserts and because its conclusions otherwise rested on a permissible view of the evidence, it did not commit legal error in finding that youth had failed to prove that they were rehabilitated and did not pose a threat to the safety of the public.

Affirmed.

---

beyond their presentation of the issue in their case to the court in order to preserve an evaluation of the court's treatment of the evidence of youth's conduct.